**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 7, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA *ex rel.* LOUANNE BOOTHE,

        Plaintiff-Appellant,

v.

SUN HEALTHCARE GROUP, INC.

        Defendant-Appellee.

No. 06-2156

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-03-1276 RB/DJS)**

Maureen A. Sanders, Sanders & Westbrook, P.C., Albuquerque, New Mexico (Duff Westbrook, Sanders & Westbrook, P.C. and Daniel M. Faber, Albuquerque, New Mexico, with her on the briefs), for Plaintiff-Appellant.

Paul E. Kalb, Sidley Austin LLP, Washington, D.C. (John W. Boyd and Zachary A. Ives, Freedman Boyd Daniels Hollander & Goldberg, Albuquerque, New Mexico, with him on the brief) for Defendant-Appellee.

Before **LUCERO, MURPHY**, and **GORSUCH**, Circuit Judges.

**GORSUCH**, Circuit Judge.

Louanne Boothe, a former finance and accounting employee of Sun Healthcare Group, Inc., a Medicare and Medicaid provider, filed a *qui tam* complaint, alleging that Sun overbilled the United States in ten distinct ways. Finding that three of these allegations were "based upon" information already in the public domain and that she was not an "original source" of that information, the district court held that it lacked subject matter jurisdiction under 31 U.S.C. § 3730(e)(4) of the False Claims Act, 31 U.S.C. §§ 3729-33, to hear the case.

We agree jurisdiction is lacking with respect to the three claims the district court analyzed. While we have not yet had occasion to address whether, as the district court's holding suggests, a deficiency in one claim precludes jurisdiction over all claims joined in the same lawsuit, today we clarify that it does not. Just as finding three bad apples does not necessarily warrant discarding the barrel, we hold that an independent jurisdictional analysis of each of Ms. Boothe's remaining seven claims of fraud is necessary, and accordingly remand for further proceedings.

I

During the period covered by this lawsuit, Sun, through its network of approximately 185 direct and indirect subsidiaries, operated medical facilities across the country that, among other things, provided services to Medicare- and Medicaid-eligible patients. Construing the facts in the light most favorable to Ms.

-2-

Boothe as the party opposing summary judgment in this case, Sun defrauded Medicare in ten different ways.

First, and foremost in monetary terms, Ms. Boothe alleges that Sun over-billed the government by abusing the so-called Section 1010 exception in the years 2000-2002. Section 1000 of the Medicare Provider Reimbursement Manual prohibits providers like Sun from seeking reimbursement of any profit margins (as opposed to costs actually incurred) charged by related parties assisting it in providing services to the federal government. Meanwhile, Section 1010 provides a narrow exception to this rule if the related party meets certain requirements that, among other things, seek to ensure its profit margin is based on market forces rather than a purely arbitrary internal decision; thus, Section 1010 requires that a substantial portion of the related party's business must be done with third parties before its profit margin will qualify for reimbursement by the government. Sun's bills apparently included related party profits of $10.7 million that did not come close to meeting Section 1010's strictures.

Abusing Section 1010 was, however, but the tip of the iceberg, according to Ms. Boothe. Though perhaps individually less significant in monetary terms, Ms. Boothe contends that Sun also (2) defrauded Medicare by disregarding Medicare's prudent-buyer guidelines and overcharging for therapy management services to the tune of $2.6 million; (3) overstated its temporary nursing staff's labor hours in 2001 and 2002 at Denver Mediplex Specialty Hospital ("Denver Mediplex") by

$500,000; (4) overcharged Medicare by $240,000 in 2002 for pharmacy charges at the Northview Psychiatric Hospital in Boise, Idaho; (5) improperly billed Medicare in 2001 for $200,000 worth of stolen medical supplies at Denver Mediplex; (6) overcharged Medicare by $540,000 in 2000-02 by funneling costs between Denver Mediplex and an affiliated outpatient clinic; (7) filed Medicare reimbursements for $3.6 million worth of mortgage interests payments in 2001 and 2002 associated with Denver Mediplex even though the mortgage was discharged in Sun's October 1999 bankruptcy; (8) released patients earlier than its prior practice from Ballard Rehabilitation Hospital in San Bernardino, California in order to inflate its Medicare revenue by $2 million; (9) manipulated patient discharges at Continental Rehabilitation Hospital in San Diego, California to impose improper costs on Medicare of $500,000; and (10) signed without the knowledge or consent of its patients admission forms for three years ending January 2003 in order to receive from Medicare $9 million in reimbursements for accident and injury treatments when liability potentially rested with third parties.

Ms. Boothe filed a sealed complaint in November 2003. She was, however, hardly the first *qui tam* relator to finger Sun for fraud; between October 1996 and June 1999 alone – as many as seven years before Ms. Boothe brought her suit – other relators filed no fewer than eleven other *qui tam* complaints against Sun. The allegations contained in these complaints bear striking resemblances to at least the first three aspects of Ms. Boothe's pleading, as they, too, charge Sun

-4-

with (1) fraudulently invoking the Section 1010 exception to recoup improper related-party profits; (2) violating the prudent-buyer guidelines; and (3) overstating labor hours. In response to these earlier indications of fraud at Sun, the government conducted a nationwide investigation, culminating in a settlement agreement between Sun, the government, and various *qui tam* relators in 2002, the year before Ms. Boothe even filed suit.

After Ms. Boothe filed her *qui tam* complaint and the government indicated that it would not intervene, the district court unsealed the action. Shortly thereafter, Sun filed a motion to dismiss asserting, among other things, that the district court lacked subject matter jurisdiction to consider the case. After construing Sun's motion to dismiss as a motion for summary judgment – a decision not challenged before us – the district court held that it lacked subject matter jurisdiction over Ms. Boothe's suit because three of her claims were "based upon" publicly disclosed *qui tam* complaints and Ms. Boothe was not the "original source for the public disclosures in the prior [*qui tam*] suits."[1] Ms. Boothe timely filed her notice of appeal. We assess *de novo* the issues raised in

---

[1] Finding itself without jurisdiction, the district court declined to address Sun's other arguments for dismissal, including that (1) Ms. Boothe waived her right to pursue a *qui tam* complaint in a severance agreement she executed upon her departure from Sun; (2) Sun's intervening bankruptcy, from which it emerged in 2002, discharged Sun's obligations to satisfy the claims in Ms. Boothe's *qui tam* complaint; and (3) Ms. Boothe failed to plead her *qui tam* complaint with sufficient particularity.

this summary judgment disposition. *See United States ex rel. Precision Co. v. Koch Indus.*, 971 F.2d 548, 551 (10th Cir. 1992).

II

Originally passed by Congress in 1863 "to combat rampant fraud in Civil War defense contracts," the False Claims Act, as amended, *see* 31 U.S.C. §§ 3729-33, "covers all fraudulent attempts to cause the government to pay out sums of money." *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1194 (10th Cir. 2006). Section 3730(a) authorizes the Attorney General of the United States to bring civil actions to remedy this fraud, while Section 3730(b)(1) authorizes private individuals, or relators, to bring *qui tam* civil suits on behalf of the government against those suspected of fraud – but only under certain heavily specified and well-familiar circumstances. As a bounty for identifying and prosecuting fraud on behalf of the government, not to mention complying with a gamut of procedural prerequisites, relators may receive up to 30 percent of any recovery they obtain. *See* 31 U.S.C. § 3730(d). Thus, the Act proceeds on a theory "as old as modern civilization, that one of the least expensive and most effective means of preventing frauds on the treasury is to make the perpetrators of them liable to actions by private persons acting, if you please, under the strong stimulus of personal ill will or the hope of gain. Prosecutions conducted by such means compare with the ordinary methods as the enterprising privateer does to the

slow-going public vessel." *United States v. Griswold*, 24 F. 361, 366 (D. Or. 1885).[2]

Compliance with Section 3730(e)(4)(A) of Title 31, known as the public disclosure bar, is one of the prerequisites to suit faced by relators and the focus of our attention in this dispute. It provides that

> [n]o court shall have jurisdiction over an action under this section *based upon* the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, *unless the action is brought by the Attorney General or the person bringing the action is an original source of the information*.

31 U.S.C. § 3730(e)(4)(A) (emphases added). Essentially, then, Congress has directed us to follow a two-step inquiry when a relator files a *qui tam* action. We must first ask whether the relator's action is "based upon" a preexisting public disclosure of the defendant's wrongdoing. If it is, we must then ask whether the relator was the "original source of the information." If the relator did not serve as the "original source," we must dismiss the action for lack of subject matter jurisdiction. In other words, if the fraud upon the government has already come to light, Congress has conferred upon us the power to hear only *qui tam* actions

---

[2] For a historical discussion of the False Claims Act, *see* Sean Hamer, *Lincoln's Law: Constitutional and Policy Issues Posed by the Qui Tam Provisions of the False Claims Act*, 6-WTR Kan. J.L. & Pub. Pol'y 89 (1997). "*Qui tam* is short for '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397, 1403 n.2 (2007).

from the relator who originally exposed the deception, not those from subsequent relators who may try to copycat and capitalize on the original source's efforts.

A

We begin our analysis under Section 3730(e)(4)(A) by focusing on three claims the district court discussed: (1) the Section 1010 fraud, (2) the violation of the prudent-buyer guidelines, and (3) the overstatement of labor hours, discussing the public disclosure bar's twin tests in turn.

1. Ms. Boothe readily concedes that each of these three allegations of fraud appear in prior *qui tam* suits. Still, she argues that her complaint should survive because her suit differs from prior suits with respect to the "time, place, and manner" of the alleged fraud. Thus, for example, prior *qui tam* suits revealed Sun's Section 1010 abuses as of 1998 or 1999, but do not describe Sun's practices as of 2000-02, the period encompassed by Ms. Boothe's suit. Likewise, prior *qui tam* suits allege Section 1010 abuses by certain of Sun's affiliated business units, while Ms. Boothe's suit alleges identical abuses by other affiliates.

All of this compels us to ask: what does it mean for an action to be "based upon" a preexisting public disclosure as opposed to the relator's own information for purposes of the public disclosure bar? In *Precision*, we defined the term to mean "supported by" and held that it encompasses actions "even partly based upon" prior public disclosures. *Precision*, 971 F.2d at 552. *Precision* took this tack based on an analysis of the statute's plain language and with our obligation

to construe narrowly statutes conferring our jurisdiction firmly in mind. *See id*.

It did so, as well, on the basis that "once the government knows the essential facts

of a fraudulent scheme, it has enough information to discover related frauds,"

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149

F.3d 227, 234 (3d Cir. 1998), and the purpose of *qui tam* litigation is fulfilled.

*See United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276,

1279 (10th Cir. 2004) ("Once an initial qui tam complaint puts the government

and the defendants on notice of its essential claim" further similar claims will be

dismissed.). Though *Precision*'s test has been questioned in some other

jurisdictions that take a slightly more narrow view of the phrase,[3] it reflects the

dominant approach in the circuits[4] and has been repeatedly reaffirmed by this

circuit. *See, e.g.*, *United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038,

1051 (10th Cir. 2004) (quoting *Precision*, 971 F.2d at 552, and stating: "'Based

upon' means 'supported by' and the threshold analysis is 'intended to be a quick

---

[3] *See, e.g.*, *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1348-49 (4th Cir. 1994); *United States v. Bank of Farmington*, 166 F.3d 853, 863 (7th Cir. 1999); *see also United States ex rel. Fine v. Advanced Sciences, Inc.*, 99 F.3d 1000, 1007-09 (10th Cir. 1996) (Henry, J., concurring).

[4] *See, e.g.*, *United States ex rel. McKenzie v. BellSouth Telecomm., Inc.*, 123 F.3d 935, 940 (6th Cir. 1997) (citing accordance by Second, Ninth, and Eleventh Circuits and writing: "We conclude that the interpretation of 'based upon' endorsed by the Tenth Circuit is the most consistent with the FCA's purpose."); *United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032, 1044-47 (8th Cir. 2002).

trigger for the more exacting original source analysis.'")[5] Pertinently, too,

neither of the parties before us has asked us to reconsider our precedent.

Seeking to apply *Precision* with precision, we reject the contention that a

"time, place, and manner" distinction is sufficient to escape the force of the

public disclosure bar.  Indeed, we think Ms. Boothe's concession that her first

three claims of fraud differ from previous public *qui tam* actions only on these

limited bases is highly damaging, amounting to little less than an admission that

the substance of her claims are indeed "supported by" or "partly based upon"

disclosures in prior *qui tam* cases.  A side-by-side comparison of the first three

allegations of Ms. Boothe's complaint with those contained in prior *qui tam*

actions confirms the point – the fraudulent schemes alleged are materially

identical, focusing on the mechanics of Sun's 1010 scheme, its abuse of

Medicare's prudent-buyer guidelines, and its systematic overstatement of labor

hours.  Given this, it seems to us that Ms. Boothe's claims would be barred under

any conceivable interpretation of Congress's "based upon" test.  Not a single

circuit has held that a *complete* identity of allegations, even as to time, place, and

manner is required to implicate the public disclosure bar; rather, all have held, at

a minimum, that dismissal is warranted where the plaintiff seeks to pursue a

---

[5] *See also United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 572
(10th Cir. 1995); *United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538,
1545-47 (10th Cir. 1996); *Grynberg*, 390 F.3d at 1279.

claim, the essence of which is "derived from" a prior public disclosure. *Compare, e.g.*, *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1348-49 (4th Cir. 1994) (utilizing more relator-friendly "derived from" test); *United States v. Bank of Farmington*, 166 F.3d 853, 863 (7th Cir. 1999) (same) *with Grynberg*, 390 F.3d at 1279-80 (utilizing more restrictive "supported by" test). Even Ms. Boothe cannot seriously dispute that she seeks to prosecute fraudulent schemes, the substance of which is "derived from" the claims of *qui tam* relators who have come before her.

2.      This, of course, does not end our inquiry, for even if a relator's claims are "based upon" prior public disclosures, one may still navigate around the public disclosure bar by showing that he or she is an "original source" within the meaning of Section 3730(e)(4)(A).

Congress has provided that, to qualify as an "original source," one must be an "individual who has direct and independent knowledge of the *information on which the allegations are based* and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(A) (emphasis added). Of course, one might ask: what "information" did Congress have in mind? Must the relator be the "original source" of the information on which his or her allegations are based? Or must the relator merely be the "original source" of the information on which the publicly disclosed allegations that triggered the public disclosure bar are

-11-

based?  Happily, the Supreme Court recently clarified that Section 3730(e)(4)(B) refers to the former set of information, and so we must ask whether Ms. Boothe qualifies as the "original source" of the information on which she bases her allegation.  *See Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397, 1407-08 (2007).  In announcing its decision, the Supreme Court explained that "[i]t is difficult to understand why Congress would care whether a relator knows about the information underlying a publicly disclosed allegation (*e.g.*, what a confidential source told a newspaper reporter[)] . . . .  Not only would that make little sense, it would raise nettlesome procedural problems, placing courts in the position of comparing the relator's information with the often *unknowable* information on which the public disclosure was based. . . .  It seems to us more likely . . . that the information in question is the information *underlying the action*."  *Id*.

We acknowledge circuit precedent previously suggesting that "original source" refers to the relevant information relating to the initial public disclosure, *see, e.g.,United States ex rel. Holmes v. Consumer Ins. Group*, 318 F.3d 1199, 1203 (10th Cir. 2003); *Precision*, 971 F.2d at 551; *Sandia Corp.*, 70 F.3d at 570, no longer controls in light of the Supreme Court's clarification.  Similarly, it is now clear that the district court's assessment that Ms. Boothe was not the original source "for the public disclosures in the prior [*qui tam*] suits," though quite reasonably based on our then-controlling guidance, asks the wrong question.

-12-

Even so, Ms. Boothe does not come close to satisfying the original source test. Her complaint alleges no facts suggesting that she has "direct and independent knowledge" of the information contained in her complaint; neither did she present any facts to the district court in response to defendant's summary judgment motion purporting to prove this to be the case. *See* 31 U.S.C. § 3730(e)(4)(B); *Rockwell*, 127 S. Ct. at 1407-08 ("[T]he 'information' to which subparagraph (B) speaks is the information upon which the relators' allegations are based.") (footnote omitted). On appeal, she relegates her entire discussion of the "original source" requirement to a single footnote in which she directs us to the governing statutory language and then asserts flatly and simply that she "satisfies those requirements." We have long made clear that such conclusory and ill-developed arguments are insufficient to permit us meaningful judicial review and will not be entertained. *See*, *e.g.*, *Hill v. Kemp*, 478 F.3d 1236, 1255 (10th Cir. 2007). This rule applies with special force to arguments seeking to establish our subject matter jurisdiction, for we are obliged to presume the absence of jurisdiction unless and until convinced otherwise. *See Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) ("Because the jurisdiction of federal courts is limited, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof."). Ms. Boothe chose to pitch her battle for federal jurisdiction not on the "original source" but the "based upon" test. That was a legitimate tactical

-13-

litigation decision and her prerogative, and it is therefore the basis on which we review her appeal.

B

Having determined that we lack jurisdiction over Ms. Boothe's first three claims of fraud, we must still ask what to do with the remaining seven. Sun urges us to the view, adopted by the district court, that *any* claim in a complaint "based upon" information already publicly disclosed information spoils the entire pleading.

We decline to follow Sun. Instead, we hold that district courts should assess jurisdiction on a claim-by-claim basis, asking whether the public disclosure bar applies to each reasonably discrete claim of fraud. This is, of course, how federal courts traditionally assess challenges to their jurisdiction under Fed. R. Civ. P. 12(b)(1). *See id.* ("*Every* defense, in law or fact, to *a claim* . . . shall be asserted in the responsive *pleading* thereto if one is required, except that the . . . defense[] [of 'lack of jurisdiction over the subject matter'] may at the option of the pleader be made by motion.") (emphases added). And there is nothing in Section 3730(e)(4)(A)'s plain language that moves us to think that Congress – which is presumed to legislate with the existing background rules of law in mind (perhaps especially including the federal rules, which it reviews before implementation) – meant to displace this practice. *See, e.g., United States v. Gustin-Bacon Div., Certainteed Prod. Corp.*, 426 F.2d 539, 542 (10th Cir. 1970)

-14-

("There is no contest as to the plenary power of Congress to statutorily supersede any or all of the Rules. But unless the congressional intent to do so clearly appears, subsequently enacted statutes ought to be construed to harmonize with the Rules, if feasible."); *cf. Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").

If reasonable minds might once have been able to disagree on this point, the Supreme Court's recent decision in *Rockwell* places it beyond cavil. There, the Court addressed an argument nearly the inverse of the one Sun urges on us, when a relator asserted that his status as the "original source" with respect to one claim provided the Court with jurisdiction over all his claims, many for which he plainly never served as the "original source." The Court rejected what it labeled "claim smuggling" and indicated that it had to assess jurisdiction under Section 3730(e)(4)(A) on a claim-by-claim basis. In doing so, moreover, the Court quoted a Third Circuit decision by then-Judge Alito addressing much the issue we face and holding that "[t]he plaintiff's decision to join all of his or her claims in a single lawsuit should not rescue claims that would have been doomed by section (e)(4) if they had been asserted in a separate action. And likewise, this joinder should not result in the dismissal of claims that would have otherwise survived."

*Rockwell*, 127 S. Ct. at 1410 (quoting *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 102 (3d Cir. 2000) (Alito, J.)). Accordingly, the Third Circuit concluded, as we do today, that "in applying section (e)(4), it seems clear that each claim in a multi-claim complaint must be treated as if it stood alone." *SmithKline*, 205 F.3d at 102.[6]

We pause to acknowledge one pleading peculiarity associated with this case. Ms. Boothe's complaint does not formally denominate each of her ten claims for fraud as separate causes of action, but instead recites them in laundry list fashion at the outset of her pleading and follows them with a single citation to the False Claims Act. The parties before us, however, do not dispute that each of the ten fraudulent schemes Ms. Boothe identifies is tantamount to a discrete and independent cause of action for fraud. Because we seek to give meaning not just to the form but the substance of a plaintiff's complaint, it seems to us that each of the separate frauds Ms. Boothe describes must be analyzed on its own terms. *See* Fed. R. Civ. P. 8 ("No technical forms of pleading or motions are required."; "All

---

[6] While we have not previously addressed the issue expressly, we have previously analyzed jurisdiction under Section 3730(e)(4) on a claim-by-claim basis. *See, e.g.*, *MK-Ferguson Co.*, 99 F.3d at 1546-47. Sun argues that our decision in *Precision* proceeded otherwise. We disagree. Our point in *Precision* was much the Supreme Court's point in *Rockwell*; we rejected the idea that Section 3730(e)(4) bars only causes of action based *solely* on public disclosures, holding instead that a relator may not "claim smuggle" by seeking jurisdiction over a claim *partially* based on public information. *See Precision*, 971 F.2d at 552-53; *see also MK-Ferguson Co.*, 99 F.3d at 1546-47.

pleadings shall be so construed to do substantial justice."); *see also* Wright &

Miller, 5 Fed. Prac. & Proc. Civ. 3d § 1202. It is for this reason that we

recognize and hold that courts must analyze the jurisdictional status of each

reasonably discrete claim of fraud in a *qui tam* action and do so based on a review

of the substance of the complaint, not just how it may be formally structured.

The question remains whether Ms. Boothe's remaining seven claims of

fraud can, even when viewed independently, survive the strictures of the public

disclosure bar. Because the application of the "based upon" and "original source"

tests turn on important factual questions, ones on which we have no record before

us, we think the appropriate course is to remand the matter for the district court's

consideration in the first instance.[7]

* * *

Because three of the ten claims in Ms. Boothe's *qui tam* action were "based

upon" publicly disclosed allegations of fraud upon the government and Ms.

Boothe was not their "original source," we affirm the district court's decision to

grant Sun's motion for summary judgment on those scores. Because we hold that

jurisdiction under the public disclosure bar must be assessed on a claim-by-claim

---

[7] Neither do we at this time reach Sun's alternative, non-jurisdictional arguments for dismissal on which the district court has yet to pass. *See supra* note 1.

basis, however, we remand the remaining seven claims for an independent jurisdictional assessment.

*Affirmed in part and reversed and remanded in part.*