NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0681n.06

No. 16-6212

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF TENNESSEE ex rel. JASON ARMES, | ) ) ) | **FILED** Dec 08, 2017 DEBORAH S. HUNT, Clerk |
| Relator-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN |
| JAN GARMAN, et al., | ) ) | DISTRICT OF TENNESSEE |
| Defendants-Appellees. | ) ) ) | |

BEFORE:     BOGGS, BATCHELDER, and BUSH, Circuit Judges.

**BATCHELDER, Circuit Judge.**  Relator Jason Armes brought this *qui tam* action on behalf of the United States and the State of Tennessee against two Tennessee hospitals owned by Select Medical Corporation, and several hospital employees and executives ("the Select Medical defendants").  Armes alleged that the Select Medical defendants violated the False Claims Act and the Tennessee Medicaid False Claims Act by submitting false claims for payment to Medicare and Tenncare, Tennessee's Medicaid program.  The district court dismissed Armes's claims with prejudice.  We **AFFIRM**, albeit on grounds different from those on which the district court relied.

## I.

Select Specialty Hospital - Knoxville and Select Specialty Hospital - North Knoxville are part of a network of Long Term Acute Care ("LTAC") facilities owned by Select Medical

Corporation. The individual defendants are employees and executives at these LTAC facilities. These LTAC facilities treat patients who have multiple acute or chronic conditions that require extended medical and rehabilitative treatments. Relator Jason Armes worked at Select Specialty Hospital - Knoxville as a respiratory therapist from 2005 until 2012, when the hospital terminated his employment.

Armes brought this *qui tam* action against the Select Medical defendants in the Eastern District of Tennessee in March 2014. Armes alleged that from "at least 2005" until 2014, the Select Medical defendants "[a]s a matter of corporate policy" engaged in several fraudulent schemes designed to exploit Medicare's reimbursement policies and maximize hospital profits without regard for patient health and safety. *First*, Medicare reimburses LTAC facilities at a higher rate than that for other hospitals. Armes alleged that the Select Medical defendants manipulated patient admissions and discharges to achieve and maintain LTAC status—and thus the higher reimbursement rate—for Select Medical hospitals. *Second*, Medicare reimburses LTAC facilities a predetermined amount per patient based on the average length of stay and the average cost to treat patients with the same diagnosis, but reimburses LTAC facilities a lower amount if the patient is discharged early. Armes alleged that the Select Medical defendants ensured that patients stayed just long enough to earn the higher reimbursement amounts but discharged patients immediately thereafter to maximize profits. *Third*, Armes alleged that the Select Medical defendants billed Medicare and Tenncare both for medically unnecessary services and for medical services that the Select Medical defendants did not actually provide to patients. *Fourth*, Armes alleged that the Select Medical defendants violated federal and state law by providing bonuses to "liaisons" who ensured that patients remained on ventilators long enough to trigger significantly higher Medicare reimbursement amounts.

Armes alleged that each of these fraudulent schemes culminated in the Select Medical defendants filing false claims for reimbursement from both Medicare and Tenncare, in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, and the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 to 185.

The Select Medical defendants moved to dismiss Armes's complaint. Days before the district court heard argument on the motion to dismiss, Armes filed a motion to amend his complaint. The district court denied this motion on the grounds of both undue delay and futility and dismissed Armes's FCA claims with prejudice. The district court dismissed all but one of Armes's FCA claims based on the FCA's first-to-file bar, because of a then-pending *qui tam* action in the Southern District of Indiana alleging Medicare reimbursement fraud against Select Medical Corporation. The district court dismissed the remaining FCA claim under Federal Rule of Civil Procedure 9(b). The district court refused to exercise supplemental jurisdiction over Armes's state-law claims and dismissed them without prejudice.

Armes filed a timely notice of appeal. Shortly before Armes filed his merits brief, the Indiana district court dismissed portions of the Indiana *qui tam* action against Select Medical. *See U.S. ex rel. Conroy v. Select Med. Corp.*, 211 F. Supp. 3d 1132 (S.D. Ind. 2016). Armes then filed a motion asking this court to vacate the district court's dismissal of his action and to remand without addressing the merits of the appeal. A motions panel of this court denied the motion but instructed Armes to seek from the district court an indicative ruling on whether that court might grant a Federal Rule of Civil Procedure 60(b) motion for relief from judgment based on the ruling in the Indiana case.

Armes filed a motion in the district court requesting that indicative ruling. Days before we heard oral argument in this case, the district court issued its indicative ruling. The district

court concluded that the Indiana district court's partial dismissal of the Indiana *qui tam* action did not provide a basis for Rule 60(b) relief in this action because the Indiana *qui tam* action was still pending both when Armes brought his action and when the district court dismissed this action. The district court also rejected Armes's argument that the Supreme Court's decision in *Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970 (2015), required the district court to dismiss Armes's FCA claims without prejudice. Because those of Armes's FCA claims that the district court had initially dismissed under the first-to-file bar would also be barred by the FCA's public-disclosure bar, the district court concluded that dismissal with prejudice was appropriate.

## II.

On appeal, Armes argues that the district court erroneously dismissed his claims as barred by the FCA's first-to-file bar. Or, Armes argues, even if the district court did not err by dismissing his claims under the FCA's first-to-file bar, it erred by dismissing his claims with prejudice. In support of that argument, Armes again cites *Carter*, 135 S. Ct. at 1978, which held that district courts should dismiss claims under the FCA's first-to-file bar without prejudice. Armes also challenges the district court's denial of his motion to amend his complaint and its refusal to exercise supplemental jurisdiction over his state law claims.

## A.

We review de novo a district court's dismissal of an FCA case under either Federal Rule of Civil Procedure 12(b)(6) or 12(b)(1).[1]  *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 407 (6th Cir. 2016); *U.S. ex rel. McKenzie v. BellSouth Telecomm., Inc.*, 123 F.3d

---

[1]The district court described both the Rule 12(b)(1) and Rule 12(b)(6) standards. Following Sixth Circuit precedent, the district court treated the first-to-file bar as jurisdictional and appears to have dismissed all but one of Armes's FCA claims under Rule 12(b)(1). The district court dismissed Armes's remaining FCA claim under Rule 9(b) and Rule 12(b)(6).

935, 938 (6th Cir. 1997). "This court may affirm on any grounds supported by the record, even those not relied on by the district court." *U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 435 (6th Cir. 2016).

The FCA bars actions where "substantially the same allegations or transactions" were previously "publicly disclosed" in certain judicial or administrative proceedings, government reports, government audits or investigations, or news media reporting unless the action is brought by "an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The purpose of this public-disclosure bar is to "discourage opportunistic plaintiffs from bringing parasitic lawsuits" that "merely feed off a previous disclosure of fraud." *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 507 (6th Cir. 2009) (quoting *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2005)). The public-disclosure bar "provides a broad sweep" and is "wide-reaching." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011) (internal alteration, quotation marks, and citation omitted).

Congress amended the FCA's public-disclosure bar in 2010 as part of the Patient Protection and Affordable Care Act. *See U.S. ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 430 (6th Cir. 2016) ("*ABLE*"). The amendment was not retroactive. *Id.* Because Armes alleges Medicare reimbursement fraud that occurred both before and after the amendment date, we address the amendment where it affects our analysis.

Our public-disclosure bar analysis proceeds in three steps. *First*, we look to see whether there has been a public disclosure of fraud. *Poteet*, 552 F.3d at 511. There has been a public disclosure when "enough information exists in the public domain to expose the fraudulent transaction" and to "put the government on notice of the likelihood of related fraudulent activity." *U.S. ex rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 615–16 (6th Cir. 2015)

(internal quotation marks and citations omitted). Court filings in cases where the government or its agent is a party constitute a public disclosure. *Id.*; 31 U.S.C. § 3730(e)(4)(A)(i).

*Second*, we look to see whether the *qui tam* complaint is "based upon"[2] the disclosed fraud. *Poteet*, 552 F.3d at 513. A later *qui tam* complaint is based upon a publicly disclosed fraud when a "substantial identity" exists between the publicly disclosed allegations or transactions and the *qui tam* complaint. *Id.* at 514 (quotation marks and citation omitted). There need not be a complete identity "even as to time, place, and manner" between the publicly disclosed allegations or transactions and the later *qui tam* complaint in order to trigger the public-disclosure bar. *Id.* (quoting *U.S. ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1174 (10th Cir. 2007)). "Any action based *even partly* upon public disclosures" is barred. *Id.* (internal quotation marks and citation omitted).

*Third*, we look to see if the relator is an "original source." *Id.* at 515. To be an original source under the pre-amendment version of the FCA's public-disclosure bar, a relator needed both to have "direct and independent knowledge of the information on which the allegations are based" and to have disclosed that information to the government before any public disclosure occurred. *Id.* The current version of the public-disclosure bar includes a second category of original sources, in which "the claimant must have knowledge that 'materially adds to' the public disclosure." *ABLE*, 816 F.3d at 431 (quoting 31 U.S.C. § 3730(e)(4)(B)). In *ABLE*, we interpreted this to include only information that "'would affect a person's decision-making,' is 'significant,' or is 'essential.'" *Id.* (quoting Black's Law Dictionary 1124 (10th ed. 2014)). *Qui tam* complaints that "merely 'add[] details' to what is already known in outline" do not

---

[2]In the 2010 amendment, Congress changed the language of the public-disclosure bar from "based upon the public disclosure of allegations or transactions" to "if substantially the same allegations or transactions . . . were publicly disclosed." Because this court had already interpreted the "based upon" language to mean a "substantial identity," *Poteet*, 552 F.3d at 514, the 2010 amendment does not affect our public-disclosure analysis at this second step.

materially add to the publicly disclosed fraud. *Id.* at 432 (quoting *U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016)). *See also U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 213 (1st Cir. 2016) ("[A] relator who merely adds detail or color to previously disclosed elements of an alleged scheme is not materially adding to the public disclosure."); *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 815–16 (11th Cir. 2015) (additional "background information and details" that made the fraud "somewhat more plain" were not material additions).

We hold that all of Armes's FCA claims were barred by the FCA's public-disclosure bar. *First*, before Armes filed his *qui tam* action, the Indiana *qui tam* action had publicly disclosed allegations of Medicare reimbursement fraud by Select Medical Corporation. The Indiana *qui tam* action alleged "a corporate-wide policy" of manipulating patient stays to maximize Medicare payments. *Conroy*, 211 F. Supp. 3d at 1139. The information in the Indiana complaint was more than enough to expose the alleged fraud and put the government on notice of the likelihood of related fraudulent activity, especially because the United States government was involved in and filed briefing in the Indiana *qui tam* action. *See id.* at 1141.

*Second*, Armes's *qui tam* action was "based upon" the same Medicare reimbursement fraud that was publicly disclosed in the Indiana *qui tam* action. Both complaints alleged company-wide schemes to manipulate patient stays in order to maximize Medicare reimbursements. Both complaints alleged that Select Medical fraudulently billed Medicare for services that either were not rendered or were not medically necessary. There is therefore a substantial identity between the Medicare-reimbursement fraud alleged in the Indiana *qui tam* action and the Medicare-reimbursement fraud Armes alleged. Although Armes alleged "slightly different" "particular details," including the use of bonuses to ensure that patients stayed on

ventilators long enough to trigger higher Medicare reimbursements, the "primary focus" of the two complaints is the same. *See Poteet*, 552 F.3d at 514–15. Armes's *qui tam* complaint is therefore "based upon" the alleged fraud publicly disclosed by the Indiana *qui tam* action.

*Third*, Armes was not an original source of the information in his *qui tam* complaint. The Indiana *qui tam* complaint was unsealed in January 2013, but Armes did not disclose his knowledge to the government until March 2014. Therefore, even if Armes had direct and independent knowledge of the Medicare-reimbursement fraud, he was not an original source under the pre-amendment public-disclosure bar because his disclosure of that knowledge to the government did not occur before the Indiana public disclosure. Nor was Armes an original source under the current version of the public-disclosure bar because his allegations did not materially add to the publicly disclosed Medicare reimbursement fraud. The Indiana *qui tam* complaint alleged "the knowing manipulation of Length of Stay for patients at Select Long Term Acute Care Hospitals to maximize reimbursement . . . , unnecessary medical procedures and upcoding." Specifically, the Indiana *qui tam* complaint alleged that Select Medical LTAC facilities held patients longer than medically necessary so as to obtain higher Medicare reimbursements, forced patients to leave Select Medical LTAC facilities prematurely once the Medicare predetermined payment was earned, admitted patients who did not require LTAC care, billed Medicare for medically unnecessary procedures, targeted patients whose length-of-stay was expected to be long to maintain LTAC-facility status for Select Medical hospitals, and "rewarded physicians willing to manage patients with the primary goal of maximizing . . . reimbursement." Although it is true, as Armes emphasizes, that "only Jason Armes" has alleged some additional details, none of those details is significant or essential to the alleged Medicare

reimbursement fraud that was already publicly disclosed in the Indiana *qui tam* action. Armes is therefore not an original source under either version of the FCA's public-disclosure bar.

The FCA's public-disclosure bar supports affirming the district court's dismissal of all of Armes's FCA claims with prejudice. We affirm on that ground.[3]

**B.**

We normally review a district court's order denying a motion to amend for abuse of discretion. *Sheldon*, 816 F.3d at 407. However, where a district court denies a motion to amend because the complaint as amended could not withstand a motion to dismiss, we review that order de novo. *Id.* The district court denied Armes leave to amend his complaint on the grounds of both undue delay and futility.

District courts must generally give plaintiffs "at least one chance to amend the complaint" before dismissing it with prejudice. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) (internal quotation marks and citation omitted). Where a plaintiff engages in undue delay or where an amendment would be futile, denial may be appropriate. *Id.* When a district court denies a motion to amend based on undue delay, we look to see whether the plaintiff had sufficient notice that his complaint was deficient, and if so, whether the plaintiff had an adequate opportunity to cure the deficiencies. *Id.*

Here, the Select Medical defendants filed a motion to dismiss in November 2015, relying on the first-to-file bar, the public-disclosure bar, and Rule 9(b), putting Armes on notice that his complaint might require amendment. Armes sought and received an extension of time to respond, and responded in January 2016. Although Armes said that he "would have preferred to

---

[3]The pre-amendment public-disclosure bar was jurisdictional, *Rockwell Intern. Corp. v. United States*, 549 U.S. 457, 467–68 (2007), so we affirm the district court's dismissal of Armes's FCA claims based on conduct alleged to have occurred prior to the amendment date under Rule 12(b)(1). The current version of the public-disclosure bar is not jurisdictional, *ABLE*, 816 F.3d at 433, so we affirm the district court's dismissal of Armes's FCA claims based on post-amendment conduct under Rule 12(b)(6).

have been able to file an amended complaint" at that time, he claimed that evolving case law and the holidays had gotten in his way. He then waited until April 2016, nearly five months after the motion to dismiss and three days before oral argument on that motion, to file a motion to amend his complaint. Even then, Armes did not allege any new schemes that were not barred by the FCA's first-to-file or public-disclosure bars in his proposed amended complaint. The district court did not abuse its discretion by denying Armes's motion to amend his complaint based on undue delay.

## C.

We review for an abuse of discretion a district court's refusal to exercise supplemental jurisdiction. *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). "[G]enerally, if the federal claims are dismissed before trial the state claims should be dismissed as well." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 803 (6th Cir. 1996) (internal quotation marks and citations omitted). The district court did not abuse its discretion by refusing to exercise supplemental jurisdiction over Armes's state-law claims after dismissing his federal claims.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court. We **DENY** the Select Medical defendants' October 9, 2017, motion to take judicial notice.