FILED
**United States Court of Appeals**
**Tenth Circuit**

**August 13, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES HERON, | |
| Plaintiff – Appellant, | |
| v. | No. 21-1362<br>(D.C. No. 1:17-CV-03084-PAB-STV)<br>(D. Colo.) |
| NATIONSTAR MORTGAGE, LLC, | |
| Defendant – Appellee. | |

_____

**ORDER AND JUDGMENT***
_____

Before **BACHARACH, EID,** and **ROSSMAN,** Circuit Judges.

_____

After James Heron lost his home through foreclosure, he sued Nationstar Mortgage LLC, Aurora Loan Services, LLC, Aurora Bank FSB, and Aurora Commercial Corporation in federal district court in Colorado under the False Claims Act, 31 U.S.C. § 3729 (FCA or Act).[1] The FCA

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, *res judicata*, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Mr. Heron originally named several other defendants including individuals and law firms—all were dismissed without prejudice on October

permits individuals to sue on behalf of the United States—known as "*qui tam*" actions—alleging a third party defrauded the government by submitting fraudulent claims for payment. But the FCA's public disclosure bar requires federal courts to dismiss *qui tam* actions where the complaint's allegations closely match information publicly disclosed within the meaning of the statute unless the plaintiff is "an original source of the information." 31 U.S.C. § 3730(e)(4)(A). Mr. Heron alleged Nationstar and Aurora, while receiving federal funds, engaged in a scheme to submit fraudulent promissory notes in foreclosure proceedings. Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), invoking the public disclosure bar. The district court granted the motion, and Mr. Heron now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I[2]

We first set out the underlying facts and procedural history. We then describe the legal standards that guide our review and provide some background on the False Claims Act. Applying those principles, we then analyze Mr. Heron's appellate challenges.

---

10, 2019. App. I at 16. Aurora was dismissed with prejudice on July 6, 2020. App. I at 17. Nationstar is the only remaining defendant.

[2] We take the facts recited here from the well-pleaded allegations in Mr. Heron's Second Amended Complaint.

2

**A**

In fall 2008, Congress passed the Emergency Economic Stabilization Act (EESA)[3] to steady housing and credit markets and to assist troubled homeowners in the midst of the U.S. financial crisis. The EESA authorized the U.S. Department of the Treasury to establish the Troubled Asset Relief Program (TARP), which funded programs intended to keep borrowers in their homes. The Home Affordable Modification Program (HAMP) provided mortgage servicers with incentive payments—known as TARP funds—to encourage servicers to permit delinquent borrowers to modify loan terms.

Nationstar and Aurora were two of the country's largest mortgage servicers. Nationstar purchased billions of dollars of loan servicing packages from other entities, including Aurora. On May 28, 2009, Nationstar contracted with Fannie Mae, a financial agent for the United States, to participate in HAMP by executing a Commitment to Purchase Financial Instrument and Servicer Participation Agreement (SPA). Nationstar accepted incentive payments from the government through TARP, HAMP, and other federal programs. Nationstar annually certified its compliance with applicable law, including requirements relating to foreclosure practices.

---

[3] 12 U.S.C. § 5201.

3

Nationstar and Aurora claimed they owned Mr. Heron's home loan (or the servicing rights associated with the loan). Mr. Heron defaulted on his mortgage loan payments. Between 2008 and 2011, Aurora initiated foreclosure proceedings against him in Colorado state court. To prove it owned Mr. Heron's loan, Aurora relied on handwritten endorsements to "Aurora Loan Services" made on various copies of a promissory note Mr. Heron executed when he originally purchased his house. Mr. Heron challenged the authenticity of the promissory note and claimed Aurora did not actually own his loan.

In 2012, Nationstar replaced Aurora as the plaintiff in Mr. Heron's state-court foreclosure proceeding. Nationstar produced a different version of a promissory note related to Mr. Heron's mortgage. Mr. Heron claimed Nationstar forged the promissory note and submitted it in state court to cover up Aurora's past forgeries about his mortgage. Mr. Heron eventually lost his home in foreclosure.

**B**

**1**

In December 2017, Mr. Heron filed a *qui tam* action in federal district court in Colorado against Nationstar, Aurora, and several other defendants, claiming they engaged in illegal foreclosure practices and submitted false claims for payment to the government under the TARP and HAMP

programs. He filed his Second Amended Complaint—the operative pleading before us—in late 2020.

Nationstar "wrongfully obtained hundreds of millions of dollars in government incentive payments," Mr. Heron alleged, "by fraudulently submitting claims and inducing the United States to execute mortgage servicer incentives contracts to allow [it] to participate and recover incentives" in HAMP. App. I at 26, ¶ 2. Nationstar allegedly submitted "false Annual Certifications and misrepresentations of past, present[,] and future compliance with federal and state laws, regulations, rules[,] and requirements." App. I at 26, ¶ 3. He claimed "[e]ach and every certification submitted to the United States in exchange for incentive payments from the United States was knowingly false when made[] because . . . Nationstar . . . forged signatures and endorsements on thousands of borrowers' promissory notes[.]" App. I at 120, ¶ 205; 122, ¶ 211. And Mr. Heron asserted "the initial and annual SPA certifications and representations executed by Nationstar . . . were knowingly false[.]" App. I at 116, ¶ 195.

Mr. Heron independently investigated foreclosure proceedings involving Nationstar, including his own. According to Mr. Heron, Aurora and Nationstar foreclosed on hundreds of other borrowers throughout Colorado and across the United States, using "forged—indeed, often fake— promissory notes[.]" App. I at 32, ¶ 24. Nationstar allegedly "accepted

incentive payments and otherwise benefitted from" federal programs. App. I at 108, ¶ 173.[4]

Mr. Heron attached documents to his Second Amended Complaint, including, publicly available mortgage records and promissory notes, a transcript of Mr. Heron's call with an Aurora employee about his home loan, the SPA between Nationstar and Fannie Mae from 2009, and an amended version of the SPA from 2010. The complaint also referenced public information and documents purporting to show the pervasiveness and illegality of Nationstar's scheme. Mr. Heron asserted two causes of action: (1) failure to return government property, in violation of 31 U.S.C. § 3729(a)(1)(D); and (2) conspiracy to violate the FCA, in violation of 31 U.S.C. § 3729(a)(1)(C). App. I at 119–22, ¶¶ 202–13.

---

[4] Mr. Heron did not identify any specific request for incentive payments submitted to the government by Nationstar or paid to Nationstar for its participation in federal programs. But Mr. Heron claimed Nationstar "knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A)" and "knowingly made, used or caused to be made or used a false record or statement material to a false or fraudulent claim that was material to the United States' decision to pay insurance claims for insured mortgages in violation of 31 U.S.C. § 3729(a)(1)(B)." App. I at 116, ¶ 195.

**2**

Nationstar moved to dismiss the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).[5] Nationstar invoked the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A), which generally prohibits FCA suits based on allegations already in the public domain. That section requires federal courts to dismiss a *qui tam* action "if substantially the same allegations or transactions as alleged in the action . . . were publicly disclosed." 31 U.S.C. § 3740(e)(4)(A). Mr. Heron's claims, Nationstar explained, were "substantially similar" to allegations or transactions in public disclosures relied on in the Second Amended Complaint. Nationstar specifically focused on allegations describing

- a consent order between Nationstar and the Massachusetts Division of Banks, for unsound servicing practices and the improper initiation and handling of foreclosure proceedings (the Massachusetts Consent Decree);

---

[5] Nationstar also urged dismissal under Federal Rule of Civil Procedure 9(b). Nationstar contended, to satisfy Rule 9(b) in the *qui tam* context, a plaintiff must allege with particularity the actual false claim for payment submitted to the government. According to Nationstar, the Second Amended Complaint did not "identify any specific claims or certifications submitted to the government or the specific dates on which those were presented." Supp. App. at 33. The district court did not reach Nationstar's Rule 9(b) argument because it concluded the public disclosure bar applied. Nationstar reprises its Rule 9(b) argument on appeal. We also need not reach this alternative ground for affirmance because we conclude, as the district court did, the public disclosure bar applies.

- the federal criminal prosecution of Lee Bentley Farkas for bank and TARP fraud schemes involving the sale of fake mortgages (the *Farkas* prosecution);

- a consent order between Aurora and the Office of Thrift Supervision for filing improperly notarized documents in foreclosure proceedings and initiating foreclosure without ensuring mortgage documents were properly indorsed (the OTS Consent Decree); and

- a mortgage fraud notice issued by the Federal Bureau of Investigation (FBI) and Mortgage Bankers Association (the FBI Notice).

Supp. App. at 26–28. Nationstar also maintained Mr. Heron could not rely on the "original source" exception in § 3730(e)(4)(B) because he lacked "knowledge that is independent of and materially adds to the publicly disclosed allegations." Supp. App. at 29. Mr. Heron's "personal investigation and summarization of public disclosures," Nationstar argued, "adds nothing independent of the information the government admittedly possessed." Supp. App. at 30.

Mr. Heron opposed dismissal. He insisted his allegations were not "substantially the same" as the publicly available information described in his complaint and, even if the allegations closely matched information publicly disclosed, he claimed to be an original source. The district court dismissed Mr. Heron's complaint under the public disclosure bar. This timely appeal followed.

8

## II

## A

"We review de novo the district court's order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Slater* v. *A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013). "To defeat a motion to dismiss, a complaint must plead facts sufficient to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). We take "all facts alleged in the complaint . . . as true" and indulge "all reasonable inferences . . . in favor of the plaintiff[]." *GF Gaming Corp.* v. *City of Black Hawk*, 405 F.3d 876, 881 (10th Cir. 2005). But "the tenet that a court must accept" well-pleaded factual allegations as true "is inapplicable to legal conclusions," so we are not bound by the plaintiff's recital of legal principles supported by conclusory statements. *Iqbal*, 556 U.S. at 678. "Generally, the sufficiency of a complaint must rest on its contents alone." *Gee* v. *Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). But we have acknowledged some limited "exceptions to this restriction on what the court can consider" including, as relevant here, documents that the complaint incorporates by reference.[6] *Id.*

---

[6] In the *qui tam* context, courts "routinely have considered undisputed documents provided by the parties in connection with Rule 12(b)(6) motions based on the public disclosure bar." *United States ex rel. Winkelman* v. *CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016) (collecting cases).

Here, the district court treated the Act's public disclosure bar as an affirmative defense—an approach unchallenged by the parties on appeal and endorsed by all circuits to have considered the issue.[7] We have recognized the appropriateness of "dismiss[ing] a claim on the pleadings based on an affirmative defense. . . . only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez* v. *Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018); *see also Miller* v. *Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("If the defense appears plainly on the face of the complaint itself, the motion [to dismiss for failure to state a claim] may be disposed of under [Rule 12(b)(6)].").

---

[7] Congress amended the FCA, effective March 23, 2010, and revised several parts of the public disclosure bar. Among other changes, the revised statute removed jurisdictional language. In *United States ex rel. Reed* v. *KeyPoint Government Solutions*, we observed courts having considered the issue unanimously interpreted the post-amendment public disclosure bar as an affirmative defense—not a jurisdiction-removing provision. *See* 923 F.3d 729, 737 n.1 (10th Cir. 2019) (collecting cases). Here, the district court, relying on *Reed*, treated the public disclosure bar as an affirmative defense. The parties endorse that conclusion on appeal. In his reply brief, Mr. Heron stated "[t]he public-disclosure bar is an affirmative defense." Reply Br. at 12. At oral argument, in response to questioning, Nationstar's counsel likewise acknowledged the public disclosure bar is an affirmative defense. Under these circumstances, we will assume for purposes of this case the public disclosure bar is an affirmative defense. *See Reed*, 923 F.3d at 737 n.1 (citing *McQueen ex rel. McQueen* v. *Colorado Springs Sch. Dist.*, 488 F.3d 868, 873 (10th Cir. 2007)).

**B**

The False Claims Act imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *See* 31 U.S.C. 3729(a)(1)(A), (B). The FCA "covers all fraudulent attempts to cause the government to pay out sums of money." *United States ex rel. Reed* v. *KeyPoint Gov't Sols.*, 923 F.3d 729, 737 (10th Cir. 2019) (quoting *United States ex rel. Conner* v. *Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008), *abrogated in part on other grounds by Universal Health Servs., Inc.* v. *United States*, 579 U.S. 176 (2016)); *see also United States* v. *Neifert-White Co.*, 390 U.S. 228, 233 (1968) (explaining Congress enacted the FCA to "protect the funds and property of the Government from fraudulent claims" (quoting *Rainwater* v. *United States*, 356 U.S. 590, 592 (1958)). But the FCA is not some "all-purpose antifraud statute . . . or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Servs.*, 579 U.S. at 194 (quoting *Allison Engine Co., Inc.* v. *United States ex rel. Sanders*, 553 U.S. 662, 672 (2008)). Instead, it was enacted to stem "massive frauds perpetrated by large contractors." *United States ex rel. Sorenson* v.

11

*Wadsworth Bros. Constr. Co., Inc.*, 48 F.4th 1146, 1157 (10th Cir. 2022) (quoting *United States* v. *Bornstein*, 423 U.S. 303, 309 (1976)).

The FCA's *qui tam* provisions allow a private individual—known as a "relator"—to bring a civil action on behalf of the government against the alleged false claimant. 31 U.S.C. § 3730(b). The FCA "imposes significant penalties on those who defraud the [g]overnment." *Universal Health Servs., Inc.*, 579 U.S. at 180. "As a bounty for identifying and prosecuting fraud," relators get to keep a portion "of any recovery they obtain." *United States ex rel. Boothe* v. *Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1172 (10th Cir. 2007) (citing 31 U.S.C. § 3730(d)).

One barrier to bringing a *qui tam* action under the FCA is the "public disclosure bar." It provides

> The court shall dismiss an action or claims under this section, unless opposed by the [g]overnment, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--
>
> > (i)     in a Federal criminal, civil, or administrative hearing in which the [g]overnment or its agent is a party;
> >
> > (ii)    in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> >
> > (iii)   from the news media,

> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). As the statutory text makes plain, courts must dismiss *qui tam* actions if there is substantial similarity between the allegations in the complaint and information publicly disclosed in statutorily-qualifying disclosures *unless* the relator is an "original source" of that information. *Id.* An "original source" has "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." *Id.* § 3730(e)(4)(B)(2). The public disclosure bar thus attempts to "strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." *Graham Cnty. Soil & Water Conservation Dist.* v. *United States ex rel. Wilson*, 559 U.S. 280, 295 (2010).

### III

Mr. Heron urges reversal on three grounds. First, he claims the district court impermissibly relied on sources that do not qualify as public disclosures under the Act. Second, he insists his lawsuit is not about allegations or transactions already in the public domain. And third, he seeks to avoid the public disclosure bar by claiming to be an "original source." Mr. Heron has waived his first argument and his remaining contentions are unavailing.

13

## A

The public disclosure bar requires federal courts to dismiss *qui tam* suits where the complaint's allegations closely match information publicly disclosed in any of the following specified channels: "(i) in a Federal criminal, civil or administrative hearing in which the [g]overnment or its agent is a party," "(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation," or "(iii) from the news media." 31 U.S.C. § 3730(e)(4)(A). The district court, agreeing with Nationstar on the issue, determined that Mr. Heron's allegations were based on information already in the public domain. In reaching this conclusion, the district court discussed four public disclosures referenced in the Second Amended Complaint—namely, the Massachusetts Consent Decree, the *Farkas* prosecution, the OTS Consent Decree, and the FBI Fraud Notice (the "Four Sources").

On appeal, Mr. Heron admits the Four Sources "on which the district court relied were all mentioned in [his] complaint" and that he "did not object to the district court's consideration of them." Opening Br. at 10 n.15. However, he now says the district court mistakenly relied on the Four Sources because they are not qualifying public disclosures under § 3730(e)(4)(A). Nationstar insists Mr. Heron waived this argument. We agree.

Generally, "a federal appellate court does not consider an issue not passed upon below." *Singleton* v. *Wulff*, 428 U.S. 106, 120 (1976). The circumstances surrounding a party's failure to advance an argument in the district court impacts whether we exercise our discretion to reach it for the first time on appeal. "If the theory was intentionally relinquished or abandoned in the district court we usually deem it waived and refuse to consider it." *Richison* v. *Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011). But if a "theory simply wasn't raised before the district court, we usually hold it forfeited." *Id.* at 1128.

Mr. Heron's strategy in the district court was to litigate the merits of the substantially-the-same standard and failing that, to urge the district court to exempt his complaint from dismissal under the original-source exception. Mr. Heron *never* argued the Four Sources were not statutorily permissible disclosures under § 3730(e)(4)(A). Just the opposite. Mr. Heron's arguments opposing dismissal—the arguments the district court actually considered and resolved—proceeded from the premise that the Four Sources were statutorily enumerated public disclosures. In its order granting Nationstar's motion to dismiss, the district court confirmed as much, observing Mr. Heron "does not dispute that the alleged public disclosures came from a source listed in the FCA or that they were made

15

public within the meaning of the FCA." App. VII at 1805. Mr. Heron never contested the district court's stated understanding.

We must conclude Mr. Heron waived, rather than forfeited, his argument that the Four Sources are not qualifying public disclosures within the meaning of the Act. Mr. Heron appears to acknowledge the waiver. In his reply brief, Mr. Heron explains his "district-court briefing did not develop the separate point that the alleged public disclosures do not qualify as permissible sources under the text of section 3730(e)(4)(A)" and, instead, it "focused . . . on denying that the alleged public disclosures were 'substantially the same' as the allegations and transactions in his complaint." Reply Br. at 1.

Instead, Mr. Heron makes two arguments to excuse the waiver. Neither is availing.

First, Mr. Heron appears to suggest the permissible-sources issue is preserved because he challenged *other* aspects of the public disclosure bar in the district court. This argument misunderstands the law. It is well settled "a party may not lose . . . on one theory of the case, and then prevail on appeal on a different theory." *Lyons* v. *Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993).

Second, Mr. Heron insists federal courts must correctly interpret and apply a federal statute notwithstanding a party's failure to make a

16

particular argument. Mr. Heron argues "[a] court's duty to identify and apply the proper construction of governing law trumps a litigant's forfeiture objections," meaning this court "must enforce the text of section 3730(e)(4)(A) regardless of whether Mr. Heron addressed the issue in his district-court-brief—and even if Mr. Heron had omitted the issue from his briefing in *this* Court." Reply Br. at 2. In support, Mr. Heron relies on *Kamen* v. *Kemper Financial Services*, 500 U.S. 90 (1991), but that case does not help him.

In *Kamen,* the Supreme Court held, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Id.* at 99. But the Supreme Court noted: "We do not mean to suggest that a court of appeals should not treat an unasserted claim as waived[.]" *Id.* at 100 n.5. As we have explained, Mr. Heron's particular appellate claim—that the Four Sources fall outside the statute's enumerated categories of qualifying public disclosures—was unasserted in the district court. Mr. Heron actually urged the opposite position in the district court.[8]

---

[8] The invited-error doctrine typically bars appellate review in such circumstances. *See United States* v. *Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005) ("[T]he invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the

17

*Kamen* reaffirmed federal courts always maintain the authority to correctly construe the law. But courts are not "self-directed boards of legal inquiry and research." *State* v. *U.S. Env't Prot. Agency*, 989 F.3d 874, 885 (10th Cir. 2021) (quoting *Nat'l Aeronautics & Space Admin.* v. *Nelson*, 562 U.S. 134, 147 n.10 (2011)). Contrary to Mr. Heron's suggestion, *Kamen* does not obviate a litigant's obligation to preserve arguments for appeal and offers no antidote to the waiver in this case.

### B

We now turn to the merits of Mr. Heron's preserved appellate claims. Mr. Heron contends the district court erred by concluding, first, that substantially the same fraud as alleged in his lawsuit was publicly disclosed, and second, that Mr. Heron had not plausibly alleged he was an "original source" under the Act. We reject each argument—largely for the same reasons as the district court.

### 1

The public disclosure bar applies only "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed." 31 U.S.C. § 3730(e)(4)(A); *see also Schindler Elevator Corp.* v. *U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011) ("The phrase 'allegations or

---

district court to adopt."). While we ultimately do not rely on the invited-error rule to resolve the issue here, it is a close call.

transactions' in § 3730(e)(4)(A) . . . suggests a wide-reaching public disclosure bar. Congress covered not only the disclosure of 'allegations' but also 'transactions,' a term that courts have recognized as having a broad meaning."). On this score, we have held "[t]he test is whether substantial identity exists between the public[] [disclosures] . . . and the *qui tam* complaint." *United States ex rel. Fine* v. *MK-Ferguson Co.*, 99 F.3d 1538, 1545 (10th Cir. 1996). We have referred to this aspect of the public disclosure bar as the "substantially-the-same standard." *See Reed*, 923 F.3d at 750.[9]

The district court concluded Mr. Heron's complaint relied on the Four Sources, which disclosed "substantially the same allegations or transactions as alleged in" his *qui tam* action. 31 U.S.C. § 3730(e)(4)(A). The district court ruled

> (1) the government was aware of the use of forged and fraudulent promissory notes in furtherance of foreclosures (FBI

---

[9] Before 2010, the public disclosure bar was triggered if the *qui tam* action was "based upon" a qualifying public disclosure; but the amended provision of the FCA states a *qui tam* action is barred if "substantially the same allegations or transactions" were publicly disclosed. *Compare* 31 U.S.C. § 3730(e)(4)(A)(2006) *with id.* § 3730(e)(4)(A)(2010); *see also Reed*, 923 F.3d at 737 n.1 (explaining the changes to the public disclosure bar made in the 2010 amendment of the statute). We have recognized "our pre-2010-amendment cases guide our substantially-the-same inquiry"—even after the 2010 amendments—because the amended statute adopts a standard "resembl[ing] the standard we already used" when analyzing the connection needed between a relator's claims and public disclosures. *See Reed*, 923 F.3d at 743–44.

notice); (2) Aurora (defendant's predecessor) entered into a consent decree due to litigating foreclosures without ensuring the promissory note and mortgage document were properly endorsed or assigned (Aurora consent decree with OTS); (3) defendant entered into a consent decree similar to Aurora's with the [Massachusetts] Division of Banks (defendant's consent decree); and (4) the use of fake promissory notes to secure a loan when the promissory note had already been sold was an issue that had been litigated (*United States v. Farkas*).

App. VII at 1809. On appeal, Mr. Heron contends reversal is required because the Four Sources did not name Nationstar specifically, did not involve the same fraudulent conduct alleged in his complaint, or both. We are not persuaded for two main reasons.

*First, Mr. Heron's argument proceeds from a hyper-specific interpretation of the public disclosure bar—an approach our court has previously rejected.* In assessing the substantially-the-same standard, "the operative question is whether the public disclosures were sufficient to set the government 'on the trail of the alleged fraud without [the relator's] assistance.'" *Reed*, 923 F.3d at 745 (quoting *U.S. ex rel. Fine* v. *Sandia Corp.*, 70 F.3d 568, 571 (10th Cir. 1995)). But the "substantially-the-same standard does not demand that the disclosures identify the defendant by name as the wrongdoer." *Id.* at 751 (rejecting an argument that public disclosure bar cannot apply where a complaint alleged claims against a different entity than the one accused of wrongdoing in public disclosures); *see also id.* at 748 n.12 (rejecting relator's "hyper-specific reading" of the

FCA which invited the court to require "near-complete identity of allegations" between earlier public disclosures and later FCA claims). Indeed, "we must recognize that the government's nose for fraud may be sensitive enough to pick up the scent even if the public disclosures did not 'identify any specific compan[y].'" *Id.* at 745 (quoting *In re Nat. Gas Royalties*, 562 F.3d 1032, 1039, 1042 (10th Cir. 2009)). And there need not be "a *complete* identity of allegations, even as to time, place, and manner" to implicate the bar. *Id.* (quoting *Boothe*, 496 F.3d at 1174). Instead, the qualifying public disclosures "need only disclose the 'material elements' of the fraudulent transaction." *Id.* (quoting *Fine*, 70 F.3d at 572). The substantially-the-same standard can be satisfied where public disclosures allege industry-wide fraud and provide enough information to link the defendant to the scheme. *See id.* at 745.

*Second, a review of the allegations in Mr. Heron's complaint leaves little doubt the information supporting his action was publicly disclosed.* In reaching the same conclusion, the district court focused on the Four Sources relied on in the Second Amended Complaint. We likewise take that approach.

### *The Massachusetts Consent Order*

Mr. Heron alleged Nationstar entered into the Massachusetts Consent Order over improper use of promissory notes in foreclosure

21

litigation. The Massachusetts Consent Order discloses Nationstar's alleged non-compliance with state and federal law applicable to its business as a mortgage lender. Nationstar's alleged noncompliance is the material element of the purported fraud at the heart of Mr. Heron's allegations in this case—that Nationstar's use of promissory notes failed to comply "with all applicable laws, rules, regulations, requirements and guidelines." *See e.g.,* App. I at 120, ¶ 205.

As Nationstar correctly points out, Mr. Heron "does not dispute the significant overlap between the conduct disclosed in the Massachusetts Division of Banks Consent order and the conduct he discloses in the complaint." Aplee. Br. at 22.[10] Mr. Heron raised no substantial-similarity argument about the Massachusetts Consent Order in his opening brief. In his reply brief, Mr. Heron disagreed the Massachusetts Consent Order publicly disclosed information that could trigger the bar. Under the circumstances, we conclude Mr. Heron has waived any argument challenging the district court's reliance on the Massachusetts Consent Order in dismissing his complaint. *See, e.g., Tran* v. *Trs. Of State Coll. In*

---

[10] Mr. Heron's only appellate argument about the Massachusetts Consent Order in the opening brief focused on whether that source was a qualifying public disclosure under the Act—an argument we have concluded was intentionally relinquished in the district court.

*Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived." (quoting *Coleman* v. *B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997), *abrogated in part on other grounds by Bostock* v. *Clayton Cnty., Georgia*, 590 U.S. 644 (2020))); *Bronson* v. *Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

### *The Farkas prosecution*

Mr. Heron's complaint discussed the prosecution of Lee Farkas. App. I at 55, ¶ 76. The government in *United States* v. *Farkas* prosecuted executives of a mortgage lender, Mr. Heron alleged, for making "false ownership claims on fake promissory notes . . . in connection with one of the largest and longest-running bank fraud and TARP fraud schemes," and the "double- and triple-selling [of] mortgage loans." App. I at 55, ¶ 76. The district court determined the *Farkas* prosecution disclosed a federal criminal action about "the use of fake promissory notes to secure a loan when the promissory note had already been sold." App. VII at 1809. According to the district court, the disclosure in *Farkas* about using "fake promissory notes to secure a loan" when the note already had been sold was substantially similar to the allegations in Mr. Heron's complaint of Nationstar's scheme to "use[] fraudulent promissory notes to effectuate

23

foreclosures." App. VII at 1806, 1809. The district court acknowledged the "purpose" for which the promissory notes in *Farkas* were used was "different" than the purpose of Nationstar's alleged fraudulent scheme here. App. VII at 1807. But, the district court reasoned, the "allegation of the use of fake notes [was] the same in *Farkas* and this case" such that the *Farkas* disclosure was substantially similar to Mr. Heron's allegations. App. VII at 1807.

Mr. Heron contends the *Farkas* prosecution does not support the district court's substantially-the-same conclusion because the scheme in *Farkas* is unlike the conduct challenged in his *qui tam* action. According to Mr. Heron, Nationstar used fake promissory notes to effectuate foreclosures and thus fraudulently obtain TARP benefits. But the scheme in *Farkas*, he explains, was different because it involved "fake notes" and "dummy loans." *Id.* at 56, ¶ 77.

While we acknowledge the differences Mr. Heron identifies, our precedent interpreting the public disclosure bar does not demand complete identity between an earlier public disclosure and allegations in a later *qui tam* action—even as to the "manner" of fraud. *Reed*, 923 F.3d at 745 (quoting *Boothe*, 496 F.3d at 1174). We also reject Mr. Heron's argument that the *Farkas* prosecution does not support the district court's substantially-the-same determination because Nationstar was not a named

defendant. As we explained, a public disclosure need not identify a particular defendant to meet the substantially-the-same standard. *Id.* at 744.

Reviewing *de novo*, we agree with the district court that Mr. Heron's allegations about the *Farkas* prosecution demonstrate the government's awareness of fake promissory notes in mortgage fraud schemes perpetuated by recipients of federal TARP funds. Mr. Heron offers no persuasive reason to disturb the district court's conclusion that the essential nature of his claims against Nationstar was already in the public domain. *Cf. Boothe*, 496 F.3d at 1174 (explaining it is enough if "the essence of" the relator's allegations was "derived from a prior public disclosure" (internal quotation marks omitted)); *Reed*, 923 F.3d at 745 (explaining public disclosures "need only disclose the material elements of the fraudulent transaction" to trigger the public disclosure bar (quoting *Fine*, 70 F.3d at 571)).

*The OTS Consent Order*

Mr. Heron's complaint alleges Aurora's consent order with OTS concerned Aurora's "unsafe or unsound" practices in foreclosure proceedings. App. I at 117–18, ¶ 199. According to the complaint, the consent order addressed Aurora's practice of filing affidavits and other mortgage related documents without proper notarization and litigating foreclosure proceedings without always ensuring promissory notes and

25

mortgage documents had been endorsed or assigned. The district court found the OTS order disclosed "Aurora (defendant's predecessor) entered into a consent decree due to litigating foreclosures without ensuring the promissory note and mortgage document were properly endorsed or assigned." App. VII at 1809. The OTS consent order, the district court ruled, "set the government on the trail" of Nationstar's alleged fraud without Mr. Heron's assistance. *See* App. VII at 1809.

Mr. Heron contends the OTS order does not specifically mention fraud or forgery and only publicly discloses misconduct by *Aurora*, not Nationstar. According to Mr. Heron, the district court failed to explain how a public disclosure of Aurora's negligence would set the government on the trail of Nationstar's criminal forgeries. We are not persuaded.

Mr. Heron alleged Nationstar's purchase of loan servicing rights from Aurora included purported rights to service his loan. Nationstar was Aurora's "successor" that "often [took] over foreclosure proceedings initiated by or on behalf of Aurora," and Nationstar continued Aurora's practice of using forged or fraudulent promissory notes in foreclosure proceedings against borrowers. App. I at 64, ¶ 90; 33, ¶ 25; 42–48. Even if the consent order between Aurora and the OTS did not name Nationstar directly, we have explained complete identity is unnecessary to trigger the public disclosure bar. *Reed*, 923 F.3d at 744–45. This is especially so when "the

26

government has already identified the problem and has an easily identifiable group of probable offenders." *Fine*, 70 F.3d at 572.

The government would not need to look far from Aurora's identified wrongdoing to investigate whether Nationstar also used improperly endorsed promissory notes in foreclosure proceedings—particularly in proceedings involving servicing rights it acquired from Aurora. The OTS consent order thus reflects the "essence," *Boothe*, 496 F.3d at 1174, and "material elements," *Reed*, 923 F.3d at 745, of the fraudulent conduct allegedly committed by Nationstar.

*The FBI Fraud Notice*

Mr. Heron's complaint alleged, "[a]ccording to a mortgage fraud notice prepared jointly by the Federal Bureau of Investigation and the Mortgage Bankers Association," Nationstar's "submission of forged and otherwise fraudulent promissory notes in furtherance of foreclosure violates at least eight federal criminal statutes." App. I at 119, ¶ 204; 121, ¶ 210. In its motion to dismiss, Nationstar emphasized "[t]he FBI mortgage fraud notice goes as far as stating Nationstar 'forged and submitted fraudulent promissory notes' in violation of federal law." Supp. App. at 29. Mr. Heron, in opposing dismissal under the public disclosure bar, insisted his complaint never alleged the FBI Fraud Notice actually identified Nationstar; rather,

27

he maintained the notice generally warned mortgage fraud is illegal. He argued

> The "mortgage fraud notice" prepared jointly by the FBI and the Mortgage Bankers Association that generically listed "eight criminal statutes" is *not* alleged to actually identify Nationstar (Motion at 7-8, misleadingly characterizing this notice) but rather simply a warning of the applicable criminal statutes under which anyone engaged in mortgage f[r]aud may be held liable—a generic warning Nationstar has failed to heed and nothing more.

Supp. App. at 44.

The district court acknowledged, but did not resolve, the parties' disagreement about whether the FBI Fraud Notice actually named Nationstar. The court explained Mr. Heron's complaint included a non-working hyperlink,[11] which left the court "unable to determine whether the [FBI] notice identifies [Nationstar] or not." App. VII at 1808.[12] Still, the district court determined, based on the complaint's allegations about the FBI notice, "the government was aware of the use of forged and fraudulent

---

[11] The court observed "[t]he link relator provides for the notice goes to 'page not found' on the FBI website, *see Page not found*, Fed. Bureau of Investigation, https://goo.gl/qaNWIX (last visited Sept. 15, 2021, 10:47 a.m.) . . . ." App. VII at 1808.

[12] Mr. Heron does not challenge this component of the district court's ruling. In any event, a public disclosure need not specifically name an entity for later *qui tam* claims to trigger the public disclosure bar with respect to that entity. *See Reed*, 923 F.3d at 744–45.

promissory notes in furtherance of foreclosures (FBI notice)." App. VII at 1809.

On appeal, Mr. Heron says the district court erroneously relied on the FBI Fraud Notice in applying the public disclosure bar. He appears to make two arguments supporting reversal, but neither is successful.

First, Mr. Heron contends the district court erred by making findings about the FBI Fraud Notice when it admitted it had not reviewed the document. This point is well taken as a general matter, but it is not particularly relevant here. When deciding a Rule 12(b)(6) motion, a district court must accept as true all well-pleaded factual allegations. *See*, *e.g.*, *GFF Corp.* v. *Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997). To be sure, a district court may not accept as true "factual allegations that *contradict* . . . a properly considered document[.]" *Id.* (emphasis added). Mr. Heron's complaint did not attach the FBI Fraud Notice, and as discussed, the link provided in the complaint was inoperable. Under the circumstances, the district court understandably relied on the complaint's allegations about the Notice.

Second, Mr. Heron argued the FBI Fraud Notice, properly construed, does not trigger the public disclosure bar. In his opening brief, Mr. Heron includes an image of what he claims is the FBI Fraud Notice actually described in his complaint, along with an updated hyperlink. Opening Br.

at 12–13, 19. Mr. Heron maintains this FBI Notice does not mention forgery, promissory notes, or foreclosures, so it could not show—as the district court found—the government was aware of forged and fraudulent promissory notes in foreclosure proceedings.

Nationstar insists the Notice depicted in Mr. Heron's opening brief cannot be the same one referenced in his complaint. The complaint alleged the FBI and the Mortgage Bankers Association prepared the Notice, Nationstar explains, but the image in Mr. Heron's opening brief "does not mention the Mortgage Bankers Association at all and simply explains it is illegal for a 'person' to make false statements in a loan or credit application to a 'financial institution.'" Aplee. Br. at 21.

Even if we assume, as Mr. Heron insists, the FBI Notice he references on appeal is the one actually discussed in his complaint, we still see no reason to reverse. Mr. Heron acknowledged the FBI Notice referenced in his complaint, like the one in his opening brief, shows the government's awareness of fraud in the mortgage industry generally. And the district court's application of the public disclosure bar did not rest *solely* on allegations about the FBI Fraud Notice. Rather, the district court concluded the Four Sources, taken together, met the Act's substantially-the-same standard. At minimum, the FBI Fraud Notice, if interpreted in the manner

urged by Mr. Heron on appeal, does not disturb the district court's ultimate conclusion that the bar was triggered here.

Accordingly, we affirm the district court's determination that Mr. Heron's *qui tam* action involved substantially the same allegations as those already in the public domain, thereby triggering the public disclosure bar under § 3730(e)(4)(A).

**2**

We next consider Mr. Heron's argument that he is an original source of the information supporting his claims. Even where prior disclosures trigger the public disclosure bar, a claim can nonetheless avoid dismissal if the relator qualifies as an original source. *See* 31 U.S.C. § 3730(e)(4)(A). Before considering Mr. Heron's arguments, it is instructive to further consider precisely what the original source exception requires.

An original source "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." *Id.* § 3730(e)(4)(B)(2).[13] The "independent knowledge" required under

---

[13] The Act provides two definitions for "original source." *See id.* § 3730(e)(4)(B). An original source:

means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the [g]overnment the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has

§ 3730(e)(4)(B)(2) means "knowledge which is not secondhand knowledge." *MK-Ferguson Co.*, 99 F.3d at 1547. The "materially adds" requirement will ordinarily be satisfied by a "relator who discloses new information that is sufficiently significant or important that it would be capable of influenc[ing] the behavior" of the government. *Reed*, 923 F.3d at 757 (quoting *United States ex rel. Winkelman* v. *CVS Caremark Corp.*, 827 F.3d 201, 211 (1st Cir. 2016)). As we have explained, a relator who "merely adds background information or details about a known fraudulent scheme" does not materially add to the publicly disclosed allegations or transactions under § 3730(e)(4)(B)(2). *Id.* A source supplying cumulative information is not an "original source" under the Act.

In his complaint, Mr. Heron alleged he "has knowledge that is independent of and materially adds to any publicly disclosed information relating to the allegations herein." Opening Br. at 35. Mr. Heron contends he qualified as an original source under § 3730(e)(4)(B)(2) because the allegations in his complaint included 45 pages of material evidence of Nationstar's fraud in filings from Nationstar's foreclosure proceedings

---

voluntarily provided the information to the [g]overnment before filing an action under this section."

*Id.* Only the second definition is at issue here.

against other borrowers. Mr. Heron also claimed personal knowledge of material non-public information about Nationstar's alleged fraud.

In considering whether Mr. Heron satisfied the original source exception, the district court specifically evaluated eight allegations in the complaint which arguably could demonstrate Mr. Heron's independent knowledge of non-public information:

> (1) a private call with an Aurora "Executive Communications" employee where the employee disclosed that Aurora did not own relator's loan and never intended to modify the loan because the investor was not accepting modifications;
>
> (2) that Aurora and defendant produced three contradictory versions of plaintiff's promissory note in foreclosure proceedings that were each allegedly endorsed by Lorraine Dodson;
>
> (3) the existence of a third version of relator's promissory note that had never been filed in public records or filed with the court;
>
> (4) the exposure of defendant's argument that it had no records or knowledge of any forgeries or how the endorsements came into existence;
>
> (5) an affidavit obtained by relator from Lorraine Dodson, the endorser on relator's original loan documents, stating that she did not endorse the note to "Aurora Loan Services" or "Residential Funding Corporation";
>
> (6) relator's experience in the mortgage industry;
>
> (7) an internal nonpublic record obtained by relator that showed that Aurora paid to endorse a note several days before filing a forged handwritten endorsed note on Aurora's behalf; and

33

(8) an internal Nationstar agreement used to hold outside counsel accountable for taking and receiving original notes and allonges that defendant sent to counsel.

App. VII at 1811.

The district court concluded the complaint showed Mr. Heron aggregated already-public information about Nationstar's use of promissory notes in foreclosure proceedings. Mr. Heron's knowledge about his own foreclosure proceeding, the district court reasoned, was not capable of influencing the government's behavior. The district court reached the same conclusion about allegations describing Mr. Heron's general familiarity with industry practices, an internal Aurora record about an attorney endorsing a promissory note, and an internal Nationstar document about procedures relating to outside counsel. The district court determined Mr. Heron did not qualify as an original source under the Act because "a relator who merely adds background information or details about a known fraudulent scheme will typically be found not to have materially added to the publicly disclosed information." App. VII at 1813 (quoting *Reed*, 923 F.3d at 757).

Mr. Heron challenges the district court's conclusion on two grounds, but neither is availing.

According to Mr. Heron, he "needs only to *allege* that he has the knowledge required by section 3730(e)(4)(B)(2)" and the "mere allegation of

knowledge is all that is needed to survive a Rule 12(b)(6) motion." Opening Br. at 37–38. We disagree. Mr. Heron advances no authority, nor are we aware of any, requiring a district court to accept the truth of his conclusory legal assertion. *See United States ex rel. Hafter* v. *Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999) (explaining, at the motion to dismiss stage, a *qui tam* plaintiff "must allege specific facts—as opposed to mere conclusions" supporting their original source status); *see also Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (explaining courts are not bound to accept as true a legal conclusion couched as a factual allegation when assessing a motion to dismiss under Rule 12(b)(6)).

Next, Mr. Heron insists the complaint's factual allegations show he has the requisite knowledge to qualify as an original source. Reviewing *de novo*, we perceive no error in the district court's analysis or its conclusion that the complaint fails to plausibly allege Mr. Heron had knowledge "that is independent of and materially adds to the publicly disclosed allegations or transactions," as required by the Act's original source provision. 31 U.S.C. § 3730(e)(4)(B)(2).

The complaint demonstrates Mr. Heron grouped together public information collected from other foreclosure proceedings involving Nationstar. This amalgamation of public information is precisely the "secondhand knowledge" that will not qualify a relator as an original source

35

under the Act. *See MK-Ferguson Co.*, 99 F.3d at 1547; *see also In re Nat. Gas Royalties*, 562 F.3d at 1045 (explaining the original source provision's independent knowledge requirement is satisfied where a relator's knowledge is unmediated by anything but their own efforts). Mr. Heron can identify no allegations—other than pointing to his collection of public records—showing his independent knowledge of "new information that is sufficiently significant or important that it would be capable of influenc[ing]" the government's behavior regarding Nationstar. *Reed*, 923 F.3d at 757 (quoting *Winkelman*, 827 F.3d at 211). And Mr. Heron's appellate briefing does not address the district court's thorough analysis of the eight non-public facts alleged in the complaint about which Mr. Heron claims to have independent knowledge.

Accordingly, we conclude, as the district court did, the FCA's original source provision does not save Mr. Heron's *qui tam* complaint from dismissal.

## IV

We **AFFIRM** the district court's dismissal of the Second Amended Complaint.

Entered for the Court

Veronica S. Rossman
Circuit Judge